1  Bingham McCutchen LLP
   STACY W. HARRISON (SBN 175028)
2  stacy.harrison@bingham.com
   JONATHAN A. LOEB (SBN 162758)
3  jon.loeb@bingham.com
   The Water Garden
4  Fourth Floor, North Tower
   1620 26th Street
5  Santa Monica, CA  90404-4060
   Telephone:  310.907.1000
6  Facsimile:  310.907.2000

7  Attorneys for Secured Creditor
   HARTFORD LIFE, INC.
8

9            UNITED STATES BANKRUPTCY COURT

10           NORTHERN DISTRICT OF CALIFORNIA

11               SANTA ROSA DIVISION

12

13  | In re | Case No. 09-12995 |

14  | DIAMOND OAKS VINEYARDS, INC., | Chapter 11 |

15  | Debtor. | Date:  November 12, 2009 |
                | Time:  9:00 a.m. |
16  | Tax Identification No. 46-0497004 | Location:  99 South E. Street |
                |                      Santa Rosa, CA 95404 |
17  |  | Judge:  Hon. Alan Jaroslovsky |

18  NOTICE OF MOTION AND PRELIMINARY HEARING; MOTION FOR
19  RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. SECTIONS
    362(d)(1) AND (d)(4) AND *IN REM* RELIEF PURSUANT TO 11 U.S.C.
20  SECTION 362(d)(4); MEMORANDUM OF POINTS AND AUTHORITIES IN
    SUPPORT THEREOF
21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Case: 09-12995    Doc# 25    Filed: 10/28/09    Entered: 10/28/09 17:56:12    Page 1 of 22
A/73181534 1

## NOTICE OF MOTION AND PRELIMINARY HEARING ON MOTION FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. SECTIONS 362(d)(1) AND (d)(4) AND *IN REM* RELIEF PURSUANT TO 11 U.S.C. SECTION 362(d)(4)

TO THE HONORABLE ALAN JAROSLOVSKY, BANKRUPTCY JUDGE, DEBTOR DIAMOND OAKS VINEYARDS, INC., THE UNITED STATES TRUSTEE FOR THE NORTHERN DISTRICT OF CALIFORNIA, AND ALL OTHER PARTIES-IN-INTEREST:

PLEASE TAKE NOTICE THAT Secured Creditor Hartford Life, Inc., a Delaware Corporation ("Hartford") hereby moves and will for relief from the automatic stay pursuant to 11 U.S.C. §§ 362(d)(1) and (d)(4) and for *in rem* relief pursuant to 11 U.S.C. § 362(d)(4) on November 12, 2009 at 9:00 a.m. in the above-entitled Court, located at 99 South E Street, Santa Rosa, California 95404, Hon. Alan Jaroslovsky presiding.

Good cause exists to grant Hartford's motion, in that debtor Diamond Oaks Vineyard, Inc. ("Debtor") filed this bankruptcy in bad faith and in an attempt to delay, hinder, and defraud Hartford. Pursuant to Local Rule 4001-1, Hartford has set this motion for a preliminary hearing. A respondent is not required to, but may, file responsive pleadings, points and authorities, and declarations for the preliminary hearing.

DATED: October 28, 2009          Bingham McCutchen LLP


By: _____
              Stacy W. Harrison
              stacy.harrison@bingham.com
              Attorneys for Secured Creditor
              HARTFORD LIFE, INC.

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. SECTIONS 362(d)(1) AND (d)(4) AND *IN REM* RELIEF PURSUANT TO 11 U.S.C. SECTION 362(d)(4)

Secured Creditor Hartford Life, Inc., a Delaware Corporation ("Hartford") hereby moves for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and (d)(4) and *in rem* relief pursuant to 11 U.S.C. § 362(d)(4) ("Motion").

Good cause exists to grant Hartford's Motion, in that debtor Diamond Oaks Vineyard, Inc. ("Debtor") filed this bankruptcy in bad faith and in an attempt to delay, hinder, and defraud a creditor, Hartford. In February 2007, Hartford Life and Accident Insurance Company, a Connecticut Corporation ("HLAIC") made two loans to Debtor's principal, Dinesh Maniar, which were secured by two properties, respectively, owned by Maniar and located in Calistoga, California. In February 2009, Maniar defaulted on those loans, and HLAIC recorded Notices of Default. In June 2009, HLAIC assigned the loans (and its beneficial interests in the respective Deeds of Trust securing the loans) to Hartford. Hartford then set foreclosure sales of the two properties for September 15, 2009.

In an attempt to delay and hinder the foreclosures and defraud Hartford, on September 10, 2009, Maniar transferred both properties to Debtor, without Hartford's knowledge or consent as is required under the respective loan documents. Debtor promptly filed this bankruptcy action on September 14, 2009 and sent a notice to Hartford's counsel, invoking the stay provisions of 11 U.S.C. § 362(a), to prevent the foreclosures. The filing of this bankruptcy was thus in bad faith, and Hartford is entitled to relief from the automatic stay and *in rem* relief in order to proceed with its foreclosures.

This Motion is based upon this Notice and Motion, the Memorandum of Points and Authorities attached hereto, the Declarations of David Dunlap and Stacy W. Harrison, filed concurrently herewith, the Request for Judicial Notice,

filed concurrently herewith, the Proposed Order, attached hereto as Exhibit "A",
and all other files and records in this action, and such other or further evidence
adduced by Hartford at any hearing held by the Court in connection herewith, and
such other matter which the Court deems to consider.

DATED: October 28, 2009        Bingham McCutchen LLP


By: _____
            Stacy W. Harrison
        stacy.harrison@bingham.com
        Attorneys for Secured Creditor
            HARTFORD LIFE, INC.

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ...........................................................................................1
II.  BACKGROUND ...........................................................................................1
     A.   HLAIC's Loans to Dinesh Maniar, Debtor's Principal ......................1
     B.   Maniar's Fraudulent Transfer of the Properties to Debtor..................4
     C.   Debtor's Bad Faith Bankruptcy Filing................................................5
III. HARTFORD IS ENTITLED TO RELIEF FROM THE
     AUTOMATIC STAY PURSUANT TO 11 U.S.C. SECTION
     362(D)(1) .....................................................................................................7
     A.   Maniar Transferred the Properties and Debtor Filed This
          Bankruptcy in Bad Faith.....................................................................7
     B.   Debtor Cannot Demonstrate A Good Faith Reason for The
          Transfer of the Properties On The Eve of Bankruptcy ......................10
IV.  THE COURT SHOULD LIFT THE AUTOMATIC STAY
     PURSUANT TO 11 U.S.C. § 362(D)(4)......................................................12
V.   HARTFORD IS ENTITLED TO IN REM RELIEF UNDER 11
     U.S.C. SECTION 362(D)(4) .......................................................................14
VI.  CONCLUSION............................................................................................15

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*In re Duvar Apt., Inc.,*
   205 B.R. 196 (B.A.P. 9th Cir. 1996) .................................................................. 7, 8

*In re Eighty South Lake, Inc.,*
   63 B.R. 501 (Bankr. C.D. Cal. 1986), *aff'd,* 81 B.R. 580 (B.A.P. 9th Cir. 1987) .......... 8, 9, 10

*In re Joobeen,*
   Nos. 06-15749DWS, 06-15752DWS, 2008 WL 1990782 (Bankr. E.D. Pa. May 6,
   2008) ......................................................................................................... 14

*In re Southern California Sound Systems, Inc.,*
   69 B.R. 893 (Bankr. S.D. Cal. 1987) ................................................................... 8

*In re Stolrow's Inc.,*
   84 B.R. 167 (B.A.P. 9th Cir. 1988) .................................................................... 8

*In re Thirtieth Place, Inc.,*
   30 B.R. 503 (B.A.P. 9th Cir. 1983) ................................................................. 7, 8

*In re Victory Const. Co., Inc.,*
   9 B.R. 549 (Bankr. C.D. Cal. 1981*), vacated on other grounds,* 37 B.R. 222 (B.A.P.
   9th Cir. 1984) ............................................................................................. 9

*In re Williams v. Levi,*
   323 B.R. 691 (B.A.P. 9th Cir. 2005) ................................................................. 12

*In re Young,*
   No. 06-80534, 2007 WL 128280 (Bankr. S.D. Tex. Jan. 10, 2007) ......................... 12

*In re Yukon Enter., Inc.,*
   39 B.R. 919 (Bankr. C.D. Cal. 1984) .................................................................. 8

**STATE CASES**

*Behr v. Bird Way, Inc.,*
   923 S.W. 2d 470 (Mo. App. S.D. 1996) ............................................................. 13

*Shawmut Bank v. Brooks Development Corp., et al.,*
   46 Conn. App. 399 (Conn. App. 1997) ............................................................... 13

**FEDERAL STATUTES**

11 U.S.C. § 362(a) ............................................................................... 1, 5, 7, 9

11 U.S.C. § 362(d) ..................................................................................... 7

# TABLE OF AUTHORITIES

                                                                         Page

11 U.S.C. § 362(d)(1) ............................................................................ 1, 7, 15

11 U.S.C. § 362(d)(4) .................................................................................. passim

11 U.S.C. § 362(d)(4)(A) ........................................................................ 12, 14

**STATE STATUTES**

Cal. Civ. Code § 3439.04(b) ....................................................................... 13

Uniform Fraudulent Transfer Act § 4(b) (2005) .......................................... 13

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Debtor Diamond Oaks Vineyards, Inc. ("Debtor") filed this Chapter 11 Bankruptcy in bad faith, in order to avoid Secured Creditor Hartford Life, Inc.'s ("Hartford") foreclosure on properties originally owned by Debtor's principal, Dinesh Maniar ("Maniar"). In February 2007, Maniar owned two properties in Calistoga, California. He refinanced both properties with Hartford Life and Accident Insurance Company, a Connecticut Corporation ("HLAIC") and secured his loans with HLAIC with these properties. In February 2009, Maniar defaulted on the loans, and HLAIC initiated foreclosure proceedings.

On the eve of the foreclosure sales -- in an attempt to delay, hinder, and defraud his creditor -- Maniar transferred these properties to the Debtor. Within days, Debtor then, in bad faith, filed this bankruptcy and invoked the automatic stay pursuant to 11 U.S.C. § 362(a) with respect to these properties. Hartford (who was assigned HLAIC's interest in the loans and the property) thus is entitled to relief from the automatic stay for "cause" under 11 U.S.C. § 362(d)(1), in order to proceed with its foreclosures on the properties.

Hartford is also entitled for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(4), since Debtor filed its Voluntary Petition as part of a scheme to delay, hinder, and defraud creditors. In addition, Hartford is entitled to *in rem* relief with respect to the properties under 11 U.S.C. § 362(d)(4). Maniar has shown that that he is more than willing to fraudulently transfer the properties to Debtor in order to avoid foreclosure. Maniar, on behalf of Debtor, should not be given the opportunity to do this again. The Court therefore should grant Hartford's Motion in its entirety.

## II.    BACKGROUND

### A.    HLAIC's Loans to Dinesh Maniar, Debtor's Principal

Debtor is a corporation organized under the laws of the State of California.

1 Maniar is the President of the Debtor and owns 100% of Debtor's stock. Exh. B

2 (Debtor's List of Equity Security Holders) to Hartford's Request for Judicial

3 Notice, filed concurrently herewith ("RJN").

4     In February 2007, Maniar owned two properties, one located at 4500 Saint

5 Helena, Calistoga, California 94515 (APN 020-180-037-000) (the "First Property")

6 and a second located at 4529-4531 Saint Helena, Calistoga, California 94515 (APN

7 020-180-013-000) (the "Second Property") (collectively, the "Properties"),

8 respectively. At that time, Maniar refinanced the Properties with HLAIC.

9 Declaration of David E. Dunlap, filed concurrently herewith ("Dunlap Decl."), ¶ 4.

10     Pursuant to a Promissory Note dated February 15, 2007 (the "First Note"),

11 HLAIC made a loan in the principal amount of $5,250,000.00 to Maniar (the "First

12 Loan"). Exh. 1 to Dunlap Decl. Under the Loan Agreement between Maniar and

13 HLAIC, dated as of February 15, 2007 (the "First Loan Agreement"), Maniar

14 agreed to pay HLAIC certain interest-only monthly payments through March 1,

15 2012, and, thereafter, certain principal and interest monthly payments until

16 March 1, 2022, when the First Loan was to be paid off. Exhs. 1 and 2 to Dunlap

17 Decl.

18     The First Note and First Loan Agreement are secured by a Trust

19 Deed, Security Agreement, Assignment of Rents and Fixture Filing dated as of

20 February 15, 2007 (the "First Deed of Trust"), recorded on February 21, 2007 as

21 Instrument No. 2007-0006000 in the Official Records of the Recorder's Office of

22 Napa County, California ("Recorder's Office"). Exh. 3 to Dunlap Decl. Under the

23 First Deed of Trust, HLAIC has a valid, perfected first priority security interest in

24 the First Property, among other things. The First Loan Agreement and First Deed

25 of Trust also provided that HLAIC may accelerate the full, outstanding balance of

26 the First Loan upon a default by Maniar. Exhs. 2 and 3 to Dunlap Decl.

27     Pursuant to a Promissory Note dated February 15, 2007 (the "Second

28 Note"), HLAIC also made a loan in the principal amount of $3,550,000.00 to

Case: 09-12995   Doc# 25   Filed: 10/28/09   Entered: 10/28/09 17:56:12   Page 9 of 22
A/73181534 1

1  Maniar (the "Second Loan") (the First Loan and the Second Loan, collectively, the
2  "Loans"). Exh. 4 to Dunlap Decl. Under the Loan Agreement between Maniar
3  and HLAIC, dated as of February 15, 2007 (the "Second Loan Agreement"),
4  Maniar agreed to pay HLAIC certain interest-only monthly payments through
5  March 1, 2012, and, thereafter, certain principal and interest monthly payments
6  until March 1, 2022, when the Second Loan was to be paid off. Exhs. 4 and 5 to
7  Dunlap Decl.

8         The Second Note and Second Loan Agreement are secured by a Trust
9  Deed, Security Agreement, Assignment of Rents and Fixture Filing dated as of
10 February 15, 2007 (the "Second Deed of Trust"), recorded on February 21, 2007 as
11 Instrument No. 2007-0006001 in Recorder's Office. Exh. 6 to Dunlap Decl.
12 Under the Second Deed of Trust, HLAIC has a valid, perfected first priority
13 security interest in the Second Property, among other things. The Second Loan
14 Agreement and Second Deed of Trust also provided that HLAIC may accelerate
15 the full, outstanding balance of the Second Loan upon a default by Maniar.
16 Exhs. 5 and 6 to Dunlap Decl.

17        Maniar defaulted on the Loans by failing to make the respective
18 payments due on February 1, 2009. Dunlap Decl., ¶ 10. With respect to the
19 default on the First Loan, on May 13, 2009, HLAIC recorded a Notice of Default
20 and Election to Sell Under Deed of Trust and Security Agreement as Instrument
21 No. 2009-0012080 in the Recorder's Office. Exh. 7 to Dunlap Decl. With respect
22 to the default on the Second Loan, also on May 13, 2009, HLAIC recorded a
23 Notice of Default and Election to Sell Under Deed of Trust and Security
24 Agreement as Instrument No. 2009-0012079 in the Recorder's Office. Exh. 8 to
25 Dunlap Decl.

26        On June 25, 2009, HLAIC assigned the First and Second Note and the
27 First and Second Loan Agreements to Hartford. Exhs. 9 and 10 to Dunlap Decl.
28 On June 25, 2009, HLAIC also assigned its beneficial interest in the First and

MEMORANDUM OF POINTS AND AUTHORITIES

Second Deeds of Trust to Hartford. For the First Deed of Trust, the Assignment of Deed of Trust, dated June 25, 2009, was recorded on June 29, 2009 as Instrument No. 2009-0016740 in the Recorder's Office. Exh. 11 to Dunlap Decl. For the Second Deed of Trust, the Assignment of Deed of Trust, dated June 25, 2009, was recorded on June 29, 2009 as Instrument No. 2009-0016741 in the Recorder's Office. Exh. 12 to Dunlap Decl.

Maniar failed to cure the defaults, and, on August 18, 2009, Hartford recorded the Notice of Unified Trustee's Sale of the First Property as Instrument No. 2009-0021697 in the Recorder's Office. On August 21, 2009, Hartford recorded the Notice of Unified Trustee's Sale of the Second Property as Instrument No. 2009-0022006 in the Recorder's Office. Dunlap Decl., ¶ 14 and Exhs. 13 and 14 thereto. The sale on the First Property was originally set for September 10, 2009 and continued until September 15, 2009. The sale on the Second Property was originally set for September 15, 2009. Dunlap Decl., ¶ 15.

## B. Maniar's Fraudulent Transfer of the Properties to Debtor

The First and Second Loan Agreements state "[w]ithout the prior written consent of Lender (granted or withheld in Lender's discretion) . . . Borrower shall not, directly or indirectly, voluntarily or involuntarily, whether by operation of law, in trust or otherwise: (i) sell, transfer, gift, convey, assign or relinquish any interest in the Property . . . ." Exhs. 2 and 5 (Sections 4.1). However, on the eve of the foreclosure sales – September 10, 2009 – and without Hartford's knowledge or consent, Maniar transferred the Properties to Debtor. Exhs. E and F to RJN; Dunlap Decl., ¶ 16. The transfer deeds themselves state that Debtor paid no consideration for the Properties; each deed states that "[t]ransfer is a mere change in Form of Ownership" and declares that the "Documentary Transfer Tax is Zero." Exhs. E and F to RJN. Accordingly, no consideration was exchanged for the transfer.

## C. **Debtor's Bad Faith Bankruptcy Filing**

On September 14, 2009, Debtor filed its Voluntary Petition. Exh. A to RJN. On the same date, Maniar's counsel informed Hartford's counsel via email that Maniar had transferred the Properties to the Debtor and stated that the email "constitute(d) actual notice for purposes of the automatic stay pursuant to § 362(a)." Dunlap Decl., ¶ 16; Exh. 15 thereto. On October 7, 2009, Debtor filed its Schedules in support of its Voluntary Petition and its Statement of Financial Affairs. Exhs. C and D to RJN.

Debtor's Schedules and Statement of Financial Affairs reveal, however, that the Debtor is simply a shell corporation that owned virtually ***nothing*** before Maniar transferred the Properties to Debtor on the eve of the filing this bankruptcy. On its Schedule A, Debtor states that it owns only three pieces of real property: the Properties and a separate property located at 26900 Dutcher Creek Road, Cloverdale, California (the "Dutcher Creek Property"). Exh. C to RJN (Schedule A). Like the Properties, Maniar owned the Dutcher Creek Property and transferred it to Debtor **on the eve of the bankruptcy filing**, September 9, 2009. Exh. G to RJN. This transfer deed also states that Debtor paid no consideration for the Dutcher Creek Property, that "[t]ransfer is a mere change in Form of Ownership" and that the "Documentary Transfer Tax is Zero." *Id.* Accordingly, no consideration was exchanged for this transfer, either.

The Debtor's Schedule B shows an account receivable in the amount of $675,000.00 for crops growing or harvested[1] and an account receivable in the amount of $6,453,637.00 from Dutcher Creek Vineyards, Inc. Exh. C to RJN

---

[1] Debtor's Responsible Person, James T. Graeb ("Debtor's Representative") stated at the Meeting of Creditors on October 23, 2009 ("Meeting of Creditors") that this account receivable was for the "crops -- growing or harvested" listed in Item No. 32 of Schedule B. Declaration of Stacy W. Harrison, filed concurrently herewith ("Harrison Decl."), ¶ 3(a).

1 (Schedule B, ¶ 16). Debtor's Representative admitted at the Meeting of Creditors

2 that these accounts receivable were only for the crops grown on the Properties and

3 the Dutcher Creek Property. Harrison Decl., ¶ 3(a). Debtor's Representative also

4 admitted that the contracts listed on Debtor's Schedule G are only for the crops

5 from the Properties and the Dutcher Creek Property. *Id.*, ¶ 3(b). According to

6 Debtor's own Schedules, therefore, it owns virtually no other assets.[2]

7     Debtor's Statement of Financial Affairs provides even more proof that

8 Debtor filed its Petition in bad faith. In its Statement, Debtor states that its only

9 income is derived from the sale of the crops on the Properties and the Dutcher

10 Creek Property, again showing that Debtor was a "shell" corporation before the

11 transfer of the real property on the eve of the bankruptcy. Exh. D to RJN

12 (Paragraph 1).[3]

13     Moreover, the Statement of Financial Affairs contains several **false**

14 statements by Debtor. In Paragraph 10 of its Statement, Debtor claims that it

15 transferred two vineyards – the Chalk Hill Vineyard and the Carneros Vineyards –

16 to Silverado Vineyards, LLC ("Silverado") on April 29, 2009 and May 29, 2008,

17 respectively. Exh. D to RJN (Paragraph 10). Debtor also claims that it received

18 $6,075,00.00 as value for each of these properties and that Maniar "withdrew"

19 $700,000 of the net proceeds of the sale of Chalk Hill Vineyard. *Id.*

20 (Paragraphs 10 and 23).

21     However, Debtor **never** owned the Chalk Hill Vineyard or the

22 Carneros Vineyards. Those vineyards were owned by Maniar and sold by Maniar

23

24

---

25 [2] Schedule B lists certain farm equipment and vehicles -- all of which are
presumably related to the Properties and the Dutcher Creek Property -- but their
26 value is negligible compared to the value of the properties and the accounts
receivable. Exh. C to RJN (Schedule B, ¶¶ 25, 28, 33).
27 [3] Debtor's Representative testified at the Meeting of Creditors that all of this
income comes from these properties. Harrison Decl., ¶ 3(c).

28

MEMORANDUM OF POINTS AND AUTHORITIES

to Silverado.[4] Exhs. H and I to RJN (Transfer Deeds of Vineyards to Silverado). Debtor's Representative conceded at the Meeting of Creditors that Debtor never legally owned these vineyards. Harrison Decl., ¶ 3(d). Debtor's Representative also admitted that Maniar did not "withdraw" any of the net proceeds from the sale of the Chalk Hill Vineyard from Debtor. He testified that Maniar, who held legal title to the Chalk Hill Vineyard, received and retained the $700,000.00 net proceeds from the sale – and that Debtor received nothing. Harrison Decl., ¶ 3(e). It is thus undisputed and admitted that from its inception until the eve of bankruptcy, Debtor effectively had no assets and no income.[5]

## III. HARTFORD IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. SECTION 362(D)(1).

### A. Maniar Transferred the Properties and Debtor Filed This Bankruptcy in Bad Faith.

Pursuant to 11 U.S.C. § 362(d)(1), the Court shall grant relief from the automatic stay imposed by 11 U.S.C. § 362(a) "for cause." "The existence of bad faith in commencing a bankruptcy case constitutes cause for granting relief from the stay pursuant to § 362(d)." *In re Duvar Apt., Inc.,* 205 B.R. 196, 200 (B.A.P. 9th Cir. 1996). A bad faith filing is motivated by "an intent to cause hardship or to delay creditors by resort to the Chapter 11 device merely for the purpose of invoking the automatic stay, without an intent or ability to reorganize his financial activities." *In re Thirtieth Place, Inc.,* 30 B.R. 503, 505 (B.A.P. 9th Cir. 1983).

"A creditor can establish a prima facie case of bad faith filing by showing the transfer of distressed property to the debtor within close proximity to

---

[4] Debtor's Statement of Financial Affairs erroneously lists the entity as "Silverado Vineyards, LLC;" the correct name is "Silverado Sonoma Vineyards, LLC."
[5] Hartford's counsel also ran a title search regarding Debtor's ownership interests. Importantly, that search revealed that while Debtor was formed as an entity in 2002, it held no legal title to any property in Napa or Sonoma County until the transfer of the Dutcher Creek Property to it on September 9, 2009 and the transfer of the Properties to it on September 10, 2009. Harrison Decl., ¶ 4.

1   the bankruptcy filing. Once a prima facie case is established, the burden shifts to

2   the debtor to demonstrate a good faith business reason for the transfer and the

3   filing. If, in addition to the prima facie showing of bad faith, the creditor proves

4   that its substantive or procedural rights have been adversely affected by the

5   transfer and filing, 'cause' is established . . . and the Court must lift the stay." *In re*

6   *Duvar Apt., Inc.,* 205 B.R. at 200 (citing *In re Yukon Enter., Inc.,* 39 B.R. 919,

7   921-22 (Bankr. C.D. Cal. 1984) and *In re Eighty South Lake, Inc.,* 63 B.R. 501,

8   508 (Bankr. C.D. Cal. 1986), *aff'd*, 81 B.R. 580 (B.A.P. 9th Cir. 1987)). Filing a

9   bankruptcy petition to delay a secured creditor is a serious injury, and together

10  with other factors, is a harm to the creditor which constitutes cause. *See, e.g., In re*

11  *Thirtieth Place, Inc.,* 30 B.R. at 506 (real property being transferred for the "sole

12  purpose of obtaining protection under the automatic stay by filing bankruptcy", as

13  supported by the absence of any capital contribution from the debtor's principal,

14  "should result in a dismissal for cause").

15          Moreover, in determining whether a bankruptcy was commenced in

16  bad faith, a court should consider whether "[t]here are generally no employees

17  except for the principals, . . . [t]here are allegations of wrongdoing by the debtor or

18  its principals, . . . (and) [t]he debtor is afflicted with the 'new debtor syndrome' in

19  which a one-asset entity has been created or revitalized on the eve of foreclosure to

20  isolate the insolvent property and its creditors[.]" *In re Stolrow's Inc.,* 84 B.R.

21  167, 171 (B.A.P. 9th Cir. 1988).[6] An existing debtor, which was formed months or

22  years prior to its receipt of the distressed property and its subsequent filing for

23  bankruptcy protection, can exemplify the "new debtor syndrome" and will support

24

25  _____

    [6] Although many factors may be considered, "the existence of bad faith depends on
26  . . . an amalgam of factors after examination of the debtor's financial status and
    motives" and "not on the presence of any specific fact". *In re Southern California*
27  *Sound Systems, Inc.,* 69 B.R. 893, 899-900 (Bankr. S.D. Cal. 1987) (finding only
    four factors sufficient to show the filing was in bad faith).

28

1  a prima facie case of bad faith. The debtor need not be newly formed immediately
2  prior to receiving the encumbered property; an existing "corporate shell" may be
3  revitalized to isolate the property. *In re Eighty South Lake, Inc.,* 63 B.R. at 503
4  (debtor was merely a "corporate shell" for five months until receiving several
5  properties by quitclaim deed); *In re Victory Const. Co., Inc.,* 9 B.R. 549, 560
6  (Bankr. C.D. Cal. 1981*), vacated on other grounds,* 37 B.R. 222 (B.A.P. 9th Cir.
7  1984) (corporation which had been formed 16 years earlier and conducted only
8  basic business activities with one employee was used by its principal to acquire
9  property by quitclaim deed and then file for bankruptcy protection).

10       In this case, Maniar transferred the Properties to Debtor – and then
11  caused Debtor to file this bankruptcy case – in order to invoke the automatic stay
12  and delay Hartford's legitimate and then-ongoing efforts to foreclosure on the
13  Properties. Maniar owned the Properties since at least February 2007, at which
14  time he refinanced them with HLAIC and executed the First and Second Deeds of
15  Trust, securing his Loans with the Properties as collateral. Exhs. 3 and 6 to Dunlap
16  Decl. Pursuant to the First and Second Loan Agreements, Maniar also agreed not
17  to sell, transfer, gift, convey or assign any interest in the Properties without
18  Hartford's consent. Exhs. 2 and 5 to Dunlap Decl. (Sections 4.1).

19       Maniar then defaulted on the Loans, and, on the eve of the foreclosure
20  sales – without even informing Hartford, much less obtaining its consent – Maniar
21  transferred ownership of the Properties to Debtor – an entity of which he
22  admittedly owns 100% of its stock – for **no consideration**. Dunlap Decl., ¶ 16
23  Exhs. E and F to RJN. **Two business days later**, Debtor filed its Voluntary
24  Petition. Exh. A to RJN. **On that same day**, Debtor's counsel informed Hartford
25  of the transfer and invoked the protection of the automatic stay pursuant to 11
26  U.S.C. § 362(a). Dunlap Decl., ¶ 16; Exh. 15 thereto. Clearly, this bankruptcy
27  was filed in bad faith, to the detriment of Hartford's substantive and procedural
28  rights with respect to the payment of its loans and the Properties.

**B. Debtor Cannot Demonstrate A Good Faith Reason for The Transfer of the Properties On The Eve of Bankruptcy.**

Debtor can show no good faith business reason for the transfer of the Properties on the eve of bankruptcy. First, Debtor squarely fits within the "new debtor syndrome." *In re Eighty South Lake, Inc.,* 63 B.R. at 507. Before the transfers of the Properties and the Dutcher Creek Property to Debtor in September 2009, Debtor was a "shell" corporation that had no assets or income.[7] Debtor was revitalized as a corporation on the eve of foreclosure of the Properties to allow Maniar to quitclaim the Properties to Debtor and cause Debtor to file bankruptcy, thereby isolating Hartford from its foreclosure remedy.

In addition, the facts here make plain that the Debtor and its principal have engaged in serious wrongdoing. Maniar transferred the Properties in violation of the terms of his Loan Agreements with Hartford. Debtor also made **false statements** on its Statement of Financial Affairs, claiming it sold certain vineyards to Silverado for value, when Debtor **never** owned these vineyards and did not receive any value for them. Exh. D to RJN (Paragraph 10); Harrison Decl., ¶ 3(d) and (e). In fact, Maniar – who is the one who actually owned and sold the vineyards to Silverado – received the net proceeds from the sale of one of the vineyards, and Debtor received nothing. Harrison Decl., ¶ 3(e).

At the Meeting of Creditors, Debtor's Representative attempted to defend these actions by claiming that Debtor owned an "equitable" interest in the Properties and the Dutcher Creek Property and that the transfer of the deeds to Debtor on the eve of the bankruptcy was simply "perfecting" Debtor's title to these properties. Harrison Decl., ¶ 3(g). Debtor's Representative also claims that the

---

[7] Debtor's Representative also admitted at the Meeting of Creditors that Debtor's only employee is Jesse Torres, the farm manager, who is only paid approximately $24,000.00 a year. Harrison Decl., ¶ 3(f). Debtor, thus, has virtually no employees.

1  sale contracts for the grapes on the Properties are between Debtor and the
2  purchaser – seemingly attempting to establish that Debtor had some sort of
3  legitimate right to sell the crops on the Properties. *Id.*[8]

4         Debtor's claims, however, do not make sense. Leaving aside how the
5  timing of the transfers to "perfect" Debtor's title to the Properties just happen to
6  coincide with the dates of the foreclosure sales, Debtor cannot have it both ways.
7  On the one hand, Maniar represented to HLAIC that he owned the Properties –
8  including **the Properties' crops** – when he borrowed money from HLAIC. He
9  secured his Loans with the Properties as collateral, which includes the earth (i.e.,
10  the crops or grapes), the buildings and fixtures on the Properties, and even the crop
11  storage equipment. Exhs. 3 and 6 to Dunlap Decl. On the other hand, Debtor
12  contends that it owned the Properties even before the Properties were transferred to
13  it, including the grapes, and had the right to sell the grapes to another entity.
14  Assuming that Maniar representations to HLAIC were truthful, Debtor was selling
15  grapes it did not own. If Debtor had some type of "equitable" interest in the
16  Properties (an interest that was never disclosed to HLAIC or Hartford), then
17  Maniar conveyed title to HLAIC in Properties it did not own free and clear.

18        Either way, Debtor or its principal, Maniar, committed fraud. Maniar
19  cannot capitalize upon this fraud by transferring the Properties to a "shell"
20  corporation on the eve of their foreclosure sales, in order to protect his other
21  personal assets. The Court should not tolerate this misuse of the protections of the
22  bankruptcy court; it should lift the automatic stay to allow Hartford to proceed with
23  its foreclosure on the Properties.[9]

24

25  [8] Hartford has never seen these sale contracts, so it cannot independently verify the
   names of the parties, much less whether the contracts themselves even exist.
26  Harrison Decl., ¶ 5.
   [9] In any event, even if Debtor had some sort of "equitable" interest in the
27  Properties before they were transferred to it, the Court should not consider that
   interest in lifting the automatic stay to allow Hartford to foreclose on the
28                             (Footnote Continued on Next Page.)

MEMORANDUM OF POINTS AND AUTHORITIES

## IV. THE COURT SHOULD LIFT THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(D)(4).

Hartford also is entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(4). A bankruptcy court shall grant relief with respect to a parcel of real property to "a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, and defraud creditors that involved . . . [the] transfer of all or part ownership of . . . such real property without the consent of the secured creditor or court approval . . ." 11 U.S.C. § 362(d)(4)(A); *see also, In re Young,* No. 06-80534, 2007 WL 128280, at *9 (Bankr. S.D. Tex. Jan. 10, 2007) (filing bankruptcy within days of foreclosure sales evidence of scheme to defraud). Maniar transferred the Properties to Debtor – an entity 100% owned by him – as part of a scheme to delay, hinder, and defraud Hartford, a secured creditor. The Court thus should grant Hartford relief from the automatic stay under 11 U.S.C. Section 362(d)(4) as well.

Debtor, through its principal, delayed, hindered, and defrauded Hartford when it filed bankruptcy. Courts may infer the requisite intent from the circumstances: when a debtor files for bankruptcy "within one day of foreclosure sales, . . . [t]here is no question that part of the scheme was to delay the foreclosure sales". *In re Young* at *9. In order to determine whether fraud has been committed, the Court also may look to the Uniform Fraudulent Transfer Act for examples of circumstantial evidence that are commonly recognized to be evidence of fraud, including (1) transfers of property to an "insider," (2) where the transferor retains possession or control of property after the transfer, (3) if the transfer was

_____

(Footnote Continued from Previous Page.)

Properties. "Nonjudicial foreclosure affects only legal title, not any possession [e.g., equitable] right." *In re Williams v. Levi,* 323 B.R. 691, 699 (B.A.P. 9th Cir. 2005).

Case: 09-12995    Doc# 25    Filed: 10/28/09 12 Entered: 10/28/09 17:56:12    Page 19 of 22
A/73181534 1

1  made after the transferor was sued, and (4) if the value of consideration received
2  by the transferor was reasonably equivalent to the value of the asset transferred,
3  among other circumstances. *See* Uniform Fraudulent Transfer Act § 4(b) (2005)
4  and Cal. Civ. Code § 3439.04(b)).

5           Here, **two business days** before the foreclosure sales were set, Maniar
6  transferred the Properties, without receiving any consideration, to an "insider"
7  company (Debtor), for the sole purpose of avoiding the foreclosure sales. Exhs. 15
8  and 16 to Dunlap Decl.; Exhs. E and F to RJN. Maniar, as Debtor's principal,
9  controls Debtor and thus continues to control the Properties. These transfers have
10 all the indicia of fraud. *See, e.g., Behr v. Bird Way, Inc.*, 923 S.W. 2d 470, 473-
11 474 (Mo. App. S.D. 1996) (husband and wife fraudulently transferred property to
12 corporation previously owned by them and managed by family members without
13 consideration and in anticipation of creditor's action to collect on promissory
14 note); *Shawmut Bank v. Brooks Development Corp., et al.*, 46 Conn. App. 399,
15 407-408 (Conn. App. 1997) (husband and wife committed fraud when they
16 mortgaged their home to corporations owned and managed by them and their
17 relatives, when husband and wife knew that a prior creditor was seeking repayment
18 on a promissory note collateralized by their home).

19          In addition, Debtor committed fraud when it listed on its Statement of
20 Financial Affairs sales of vineyards it never owned for value it never received.
21 Exh. D to RJN (Paragraph 10); Harrison Decl., ¶ 3(d) and (e). Hartford also had
22 the right to consent to the transfer of the Properties, which Maniar ignored.
23 Exhs. 2 and 5 to Dunlap Decl. (Sections 4.1). Maniar transferred the Properties,
24 without Hartford's knowledge or consent, and only informed Hartford of the
25 transfer after the fact. Dunlap Decl., ¶ 16. Given the clear intent to delay, hinder
26 and defraud, Hartford thus is entitled to relief from stay under 11 U.S.C.
27 § 362(d)(4).

28

1

## V. HARTFORD IS ENTITLED TO *IN REM* RELIEF UNDER 11 U.S.C. SECTION 362(D)(4).

A stay relief order under 11 U.S.C. § 362(d)(4) "shall be binding on any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court," if recorded in compliance with applicable state laws governing notices of interests and liens in real property. 11 U.S.C. § 362(d)(4)(A); *see also*, *In re Joobeen*, Nos. 06-15749DWS, 06-15752DWS, 2008 WL 1990782, at *3 (Bankr. E.D. Pa. May 6, 2008) (relief under Section 362(d)(4) provides basis for *in rem* relief). Maniar already has shown that he was willing to fraudulently transfer the Properties to Debtor in order to avoid foreclosure. Maniar, on behalf of Debtor, could easily transfer the Properties again to another company and then file bankruptcy on behalf of that company. If the stay is lifted, Hartford should be able to continue its foreclosure proceedings on the Properties without fear that Maniar will attempt to unlawfully forestall the sales again. The Court therefore should grant Hartford's request for prospective relief.

Case: 09-12995    Doc# 25    Filed: 10/28/09 14 Entered: 10/28/09 17:56:12    Page 21 of 22
A/73181534 1

1

## VI. CONCLUSION

For the foregoing reasons, the Court should lift the automatic stay with respect to the Properties pursuant to 11 U.S.C. §§ 362(d)(1) and (d)(4). The Court should also order *in rem* relief with respect to the Properties, such that the automatic stay cannot be invoked with respect to these Properties in any bankruptcy proceeding for two (2) years.

DATED: October 28, 2009      Bingham McCutchen LLP

By: _____
                Stacy W. Harrison
                stacy.harrison@bingham.com
                Attorneys for Secured Creditor
                HARTFORD LIFE, INC.

A/73181534 1