Bingham McCutchen LLP
STACY W. HARRISON (SBN 175028)
stacy.harrison@bingham.com
JONATHAN A. LOEB (SBN 162758)
jon.loeb@bingham.com
The Water Garden
Fourth Floor, North Tower
1620 26th Street
Santa Monica, CA 90404-4060
Telephone: 310.907.1000
Facsimile: 310.907.2000

Attorneys for Secured Creditor
HARTFORD LIFE, INC.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SANTA ROSA DIVISION

| | |
|---|---|
| In re<br><br>DIAMOND OAKS VINEYARDS, INC.,<br><br>Debtor.<br><br>Tax Identification No. 46-0497004 | Case No. 09-12995<br><br>Chapter 11<br><br>Judge: Hon. Alan Jaroslovsky |

SECURED CREDITOR HARTFORD LIFE INC.'S RESPONSE TO DEBTOR'S MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL; DECLARATION OF STACY W. HARRISON IN SUPPORT THEREOF

## I. INTRODUCTION

On April 8, 2010, Debtor Diamond Oaks Vineyards, Inc. ("Debtor") filed its Motion for Order Authorizing Use of Cash Collateral (the "Motion") and set a preliminary hearing for April 9, 2010. In the Motion, Debtor requests an order allowing it to use Secured Creditor Hartford Life, Inc.'s ("Harford") cash collateral, currently deposited in the Debtor-In-Possession account (the "DIP Account"), to pay certain expenses over a 90 day period. Debtor also claims that an insurance premium is due and owing but does not specify which premium or when exactly it is due.

Pursuant to Federal Rule of Bankruptcy Procedure 4001(b), the court may commence a final hearing on a motion for authorization to use cash collateral no earlier than 14 days after service of the motion. The court may conduct a preliminary hearing before such 14-day period expires, but the court may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing. Debtor has not established the immediate and irreparable harm that would occur if the Court does not immediately order the use of Hartford's cash collateral, or if such harm is imminent, the amount of the cash collateral that is necessary to prevent that harm.

Hartford also is not aware of any outstanding insurance premium that is currently due and owing. In February 2008, Hartford received a notice of cancellation of one insurance policy for the failure to pay a premium, but Hartford was subsequently informed that premium was paid. In addition, Debtor has not filed a monthly operating report since December 31, 2009. Hartford thus has no accounting as to how much of its cash collateral is currently in the DIP Account. Moreover, Debtor has not provided any back up documentation for its "Cash Collateral Budget," so that the Court can evaluate the purported expenses of the bankruptcy estate.

Before ruling on the Motion, Hartford therefore requests that the

Court set a final hearing on Motion and order Debtor to provide an accounting of the cash collateral that Debtor has received and submit evidence supporting the expenses outlined in its Budget in advance of the hearing.[1]

## II. STATEMENT OF FACTS

On September 14, 2009, Debtor filed its Voluntary Petition ("Petition"). Dinesh Maniar ("Maniar") is Debtor's principal. In February 2007, Maniar owned two properties located at 4500 Saint Helena, Calistoga, California 94515 and 4529-4531 Saint Helena, Calistoga, California 94515 (collectively, the "Properties"). Pursuant to a Promissory Notes dated February 15, 2007, Hartford Life and Accident Insurance Company, a Connecticut Corporation ("HLAIC") made loans in the principal amounts of $5,250,000.00 and $3,550,000.00 to Maniar, each of which was secured by one of the Properties.[2]

Maniar executed a promissory note and loan agreement corresponding to each of these loans. *See* Exh. 1, 2, 4 and 5 to Hartford's Proof of Claim. Each of the loans was collateralized by the respective parcel of real property; all rents and profits therefrom; buildings, fixtures and appurtenances thereon; water and mineral rights, among other personal property. *See* Exh. 3 and 6 to Hartford's Proof of Claim (the "Trust Deeds"). In each of the Trust Deeds, Maniar, as the "Trustor", and HLAIC, as the "Beneficiary", granted a security interest in, and pledged and assigned, to HLAIC certain personal property. *Id.*, Section 9(d) (Trustor as "*debtor*," hereby grants to Beneficiary, as "*secured party*," to secure the payment and performance of the Obligations, a security interest in, and pledges and assigns to Beneficiary, all of Trustor's right, title, and interest in and to, the

---

[1] Hartford reserves its right to file a further response to the Motion in advance of the final hearing on the Motion.
[2] Maniar defaulted on these loans, and HLAIC initiated foreclosure proceedings. HLAIC assigned its interest in the loans to Hartford during these proceedings. The sales were set for September 15, 2009; however, Maniar transferred the Properties to Debtor on September 10, 2009, and then filed this bankruptcy action.

properties, assets and rights of Trustor . . . whether no owned or hereafter acquired or arising, and all proceeds and products thereof (collectively, the "Personal Property").)

Crops and the proceeds from their sale are specifically included in the collateral for both of the loans. The Trust Deeds define "Personal Property" to include "all crops growing or to be grown on the Property; . . . "Crops" includes annual and perennial crops and crops grown on trees or vines." *Id.*, Exhibit B. The preface to the description of personal property specifies that Maniar's "right, title and interest" in the "proceeds" of the crops is also granted to HLAIC. *Id.*

HLAIC properly perfected its security interest by recording a UCC Financing Statement with the California Secretary of State on February 14, 2007, filing number 07-7102693287 (the "UCC1"). Exh. 1 to Harrison Declaration. The collateral description in section 4 of the UCC1 mirrors the description of personal property in the Trust Deeds, specifically including crops and all products and proceeds thereof. *Id.*

Debtor received payment for crops, which were subject to HLAIC's security interest, during the pendency of Debtor's bankruptcy case. The cash payments for these crops were deposited into the DIP Account. Exh. 2 to Harrison Declaration (55:25-56:5, 56:15-57:8).

Debtor proposes to use the cash in the DIP Account to pay certain expenses of the bankruptcy estate and an insurance premium. In February 2008, Hartford did receive a notice of cancellation for Maniar's insurance policy with Federal Insurance Company (Policy No. 12860354-01) (the "FIC Policy") for his failure to pay the premium. Exh. 3 to Harrison Declaration. However, a representative of Momentous Insurance Brokerage, Inc., which services the policy, informed Hartford's counsel that the premium payment was made on Wednesday, February 24, 2010. Exh. 4 to Harrison Declaration. The representative also stated that all other insurance premiums had been paid. *Id.*

## III. THE CASH IN THE DIP ACCOUNT IS HARTFORD'S CASH COLLATERAL.

Section 552(b)(1) of the Bankruptcy Code affirms Hartford's security interest in the proceeds from the sale of crops, even if the proceeds came into the Debtor's possession post-petition. "[I]f the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquires before the commencement of the case and to proceeds, products, . . . or profits of such property, then such security interest extends to such proceeds, products, . . . or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law . . ." 11 U.S.C. § 552(b)(1). Debtor granted to Hartford a first priority security interest in Debtor's crops, and the proceeds from the sale of its crops, over two years prior to the commencement of Debtor's bankruptcy case. Debtor received cash proceeds from the sale of grapes which were subject to Hartford's security interest after Debtor filed its Petition. Thus, Hartford has a valid, first priority lien on the cash proceeds from the sale of the grapes.

These cash proceeds are Hartford's cash collateral. Cash collateral under the Bankruptcy Code includes "cash . . . deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, . . . or profits of property . . . subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title." 11 U.S.C. § 363(a). The cash in the DIP Account which is the proceeds from the sale of Debtor's grapes is therefore Hartford's cash collateral.

Debtor may not use Hartford's cash collateral unless Hartford consents or pursuant to an order of this Court. 11 U.S.C. § 363(c)(2) (the trustee or debtor in possession "may not use, sell, or lease cash collateral . . . unless – (A)

each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use . . .").

**IV. THE INSURANCE PREMIUM MAY HAVE BEEN PAID ALREADY FROM ANOTHER SOURCE.**

It is not clear from the Motion what insurance premium is due and owing. Hartford has reason to believe that the Debtor or a related party has already paid the insurance premium due on the FIC Policy. In an email dated February 26, 2010, a representative of the insurance broker servicing the policy confirmed that the payment of the premium was made. Exh. 4 to Harrison Declaration. This correspondence with the insurance broker also suggests that the other insurance premiums have already been paid. *Id.*

**V. DEBTOR SHOULD PROVIDE AN ACCOUNTING OF HARTFORD'S CASH COLLATERAL AND BACK UP DOCUMETATION REGARDING THE EXPENSES SET FORTH IN ITS BUDGET.**

In order for the Court to better evaluate Debtor's request to use Hartford's cash collateral, Debtor should provide an accounting. This accounting should include an itemized list of (1) each deposit made into the DIP Account, identifying what entity the funds were received from, and a brief description of the nature of transaction giving rise to the receivable, and (2) each withdraw or payment made from the DIP Account, identifying the party receiving the funds, and a brief description of the nature of the transaction giving rise to the payable. Debtor also should submit documentation to the Court and to Hartford supporting the expenses set forth in its Budget, so the Court may evaluate the expenses.

## VI. CONCLUSION

For the foregoing reasons, Hartford respectfully requests that the Court set a final hearing on the Motion and order Debtor to provide an accounting and submit documentation in support of the expenses in its Budget, before ruling on the Motion.

DATED: April 8, 2010

Respectfully submitted,

Bingham McCutchen LLP

By: /s/ Stacy W. Harrison

Stacy W. Harrison
stacy.harrison@bingham.com
Attorneys for Secured Creditor
HARTFORD LIFE, INC.

Case: 09-12995 Doc# 74 Filed: 04/08/10 Entered: 04/08/10 15:55:48 Page 7 of 9

# DECLARATION OF STACY W. HARRISON

I, Stacy W. Harrison, declare:

1. I am a member of the State Bar of California and am a partner with the law firm Bingham McCutchen LLP, counsel for Secured Creditor Hartford Life, Inc. ("Hartford"). I submit this declaration in support of Hartford's Opposition to Debtor's Motion for Order Authorizing Use of Cash Collateral ("Motion"). I have personal knowledge of the matters stated herein, and if called as a witness, I would and could competently testify thereto.

2. Hartford provided to me a recorded copy of the UCC Financing Statement, recorded on February 14, 2007, filing number 07-7102693287, which names "Dinesh Maniar" as the debtor (the "UCC1"). Attached hereto as Exhibit "1" is a true and correct copy of the UCC1. Hartford Life and Accident Insurance Company ("HLAIC") recorded the UCC1 to perfect the security interests granted by Dinesh Maniar which secure his payment and performance of the obligations under the promissory notes and loan agreements evidencing the loans HLAIC made to him.

3. On January 28, 2010, I deposed James T. Graeb, who appeared as the designated representative of debtor Diamond Oaks Vineyards, Inc. ("Debtor") in response to Hartford's deposition notice pursuant to Federal Rule of Bankruptcy Procedure 7030(b)(6) and Federal Rule of Civil Procedure 30(b)(6). Attached hereto as Exhibit "2" is a true and correct copy of excerpts from the deposition on that date.

4. On February 19, 2010, HLAIC received a "Notice of Cancellation" for policy number 12860354-01 which is underwritten by the Federal Insurance Company ("Notice of Cancellation"). Attached hereto as Exhibit "3" is a true and correct copy of the Notice of Cancellation.

5. On February 24, 2010, I received an email from Michelle Boyer, a representative of Momentous Insurance Brokerage, Inc., regarding insurance premiums which are due and payable on the afore-mentioned insurance policy number underwritten by Federal Insurance Company. Attached hereto as Exhibit "4" is a true and correct copy of the email received from Michelle Boyer.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this Declaration was executed on April 8, 2010, at Los Angeles, California.

Stacy W. Harrison

Case: 09-12995 Doc# 74 Filed: 04/08/10 Entered: 04/08/10 15:55:48 Page 9 of 9